6 P.3d 486

2000-NMSC-021

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Sylvestre SANCHEZ, Defendant–
Appellant.**

No. 25,456.

Supreme Court of New Mexico.

June 26, 2000.

Phyllis H. Subin, Chief Public Defender, Lisabeth L. Occhialino, Assistant Appellate Defender, Santa Fe, for Appellant.

Patricia A. Madrid, Attorney General, M. Anne Kelly, Assistant Attorney General, Santa Fe, for Appellee.

## OPINION

MINZNER, Chief Justice.

{1} Defendant Sylvestre Sanchez appeals from a judgment and sentence entered following a jury trial at which he was convicted of first degree murder of James Gentry, contrary to NMSA 1978, § 30–2–1(A) (1994), attempted murder of Darrell Wise, contrary to NMSA 1978, § 30–28–1(A) (1963), and kidnapping of Gentry and Wise, contrary to NMSA 1978, § 30–4–1 (1995). We have jurisdiction under Rule 12–102(A)(1) NMRA 2000. On appeal, Defendant raises an issue of first impression under our Rules of Criminal Procedure. He contends the trial court erred in substituting an alternate juror after the jury retired to deliberate. His contention requires us to interpret Rule 5–605 NMRA 2000, which addresses the use of alternate jurors in district court criminal trials. We conclude the trial court erred in substituting an alternate juror in this case and the error is presumptively prejudicial, because Rule 5–605 does not authorize substitution of an alternate juror after jury deliberations have begun (post-submission substitution). We also conclude the State has not overcome the presumption of prejudice the error creates. Defendant also contends on appeal that the State introduced insufficient evidence to support his convictions and that the constitutional protection against double jeopardy precludes convictions for both murder and kidnapping in this case. Neither contention has merit. Finally, Defendant contends that he received ineffective assistance of counsel, that the trial court erred in allowing the State to exercise one of its peremptory challenges, and that the court erroneously instructed the jury on kidnapping. We need not address these claims. We reverse and remand for further proceedings.

## I.

{2} Wise, whose street name is "Black," testified at Defendant's trial. Wise and Gentry encountered Defendant at the home of an acquaintance around midnight on February 22, 1996. Defendant asked Wise for a ride and, after consulting Gentry, Wise agreed. The three men departed in Gentry's truck with Wise in the driver's seat, Gentry in the front passenger seat, and Defendant in the rear section on the right side, behind Gentry. Approximately five minutes later, Wise heard a loud gun shot. Wise saw Gentry slumped over in the front passenger seat. Defendant was pointing a gun at Wise. Defendant said to Wise, "[Y]ou're ... dead ... too, Black" and then pulled the trigger. The gun jammed. After Defendant succeeded in unjamming the gun, a bullet ricocheted throughout the truck, hit Wise in the mouth, and broke two of his lower teeth. Defendant shot Wise four more times before Wise was able to escape from the truck. As Wise fled, he saw Defendant enter a vehicle operated by Bill Davis. Wise returned to the truck and drove until he "ran into the police;" Gentry was dead.

{3} Other evidence corroborated Wise's testimony. A police officer testified that Defendant confessed to shooting Gentry and Wise with a nine-millimeter gun. Gentry was killed by a gunshot wound. A bullet struck the inside panel of the door on the driver's side. One nine-millimeter casing and two .380 casings were found in the truck, and the same gun fired all three casings. A nine-millimeter gun firing .380 bullets is unreliable and "tend[s] to malfunction." Bernadette Hall Davis testified that Defendant told her he was having nightmares. When he opened his eyes the person he killed would be standing in front of him. Defendant also said that one night he went to purchase

drugs with Black and another man. Defendant was sitting in the back seat of the truck when he shot the other man. Defendant then tried to shoot Black, but he got out of the truck. Defendant chased him.

{4} At the conclusion of Defendant's trial, the alternate jurors stayed in the courtroom when the jury retired to deliberate. The court advised the alternate jurors they could go home, but they were not officially released from jury duty and should not discuss the case over the weekend. The court also said that in the event a juror became unable to serve the court might call an alternate to serve. The record indicates the jury began deliberating prior to noon on Friday, recessed for lunch, continued deliberating until approximately 5:00 p.m., and then adjourned for the weekend. On the following Monday, the court was notified that a juror was quite ill. The court permitted the juror to go home and presented counsel with two options: the first alternate juror would replace the juror who was ill; or the trial would be postponed. In the event that the parties chose the first option, the court stated it would "bring in the first alternate, . . . reinstruct him and the jury together . . . [and tell them] they need to begin deliberations from the top all over again." Defendant stated he did not oppose the first option, and the State concurred. The first alternate juror, however, was "on the road" and a substitute driver was not available until the following day. Defendant asked the court to order the juror to appear. The court concluded that his attendance would be a significant inconvenience to him, his employer, and his customers. Over Defendant's repeated objections, the court substituted the second alternate.

{5} The court instructed the jury to "start your deliberations from the beginning," to "bring [the alternate juror] up to speed as to where you are," and to "start things over again as if you were beginning deliberations right now, this morning, today." The court stated that "[t]he instructions I've given you previously, of course, still apply." Next, the court addressed the second alternate and stated, "[Y]ou are a full-fledged member of the jury, as opposed to an alternate. And, as I say, deliberations will be starting all over

again with you." The reconstituted jury had retired for deliberations by 11:30 a.m. By 3:30 p.m. the jury had found Defendant guilty of first degree murder, attempted murder, and kidnapping.

## II.

{6} At common law,

adhering to the principle of absolute jury integrity, [the courts] made no provision for substitution of a juror who, after the jury was selected, became unable or disqualified to perform his or her duties. In the event that a member of the jury became incapacitated, the entire jury was discharged. The remaining eligible jurors were immediately recalled along with an additional juror, and they were again empaneled to hear the entire trial.

*Standards for Crim. Just.: Discovery and Trial by Jury* § 15–2.9 commentary at 174–75 (1993) [hereinafter *Standards for Crim. Just.*] (standards completed July 1995). Rule 5–605 modifies common law practice.

{7} Rule 5–605(B) provides:

In any criminal case, the district court may direct that not more than six jurors, in addition to the regular jury, be called and impanelled to sit as alternate jurors. Alternate jurors, in the order in which they are called, shall replace jurors who, prior to the time the jury retires to consider its verdict, become or are found to be unable or disqualified to perform their duties. Alternate jurors shall be drawn in the same manner, have the same qualifications, be subject to a like examination and challenges for cause, take the same oath, and have the same functions, powers, facilities and privileges as the regular jurors.

Rule 5–605(C) states that "[e]xcept in felony cases in which the death penalty may be imposed an alternate juror who does not replace a regular juror shall be discharged before the jury retires to consider its verdict." The text of Rule 5–605(C) supports an inference that the trial court may not substitute an alternate juror after deliberations begin, because that juror would have been released from jury duty. Rule 5–605(B) supports the same inference by providing for

substitution prior to submission. Based on the text of Rule 5–605, Defendant contends on appeal the trial court erred in substituting the second alternate juror. He does not question the trial court's decision to excuse the juror who was ill.

{8} The State contends that Defendant failed to preserve this issue for review. *See* Rule 12–216(A) NMRA 2000. Defendant consented to the first alternate and never relied on Rule 5–605 in objecting to the second alternate. Defendant contends he is entitled to raise this issue under Rule 12–216(B), which authorizes an appellate court to consider certain questions, notwithstanding a defendant's failure to invoke a ruling at trial. In this instance, we must determine the nature of the issue before the Court prior to determining whether Defendant sufficiently brought it to the trial court's attention. For this reason, we depart from our usual procedure and address whether the error was preserved after we have analyzed the nature of the error.

{9} Rule 5–605 is similar to rules in other jurisdictions. Such rules generally protect a defendant's right to an impartial jury by specifically protecting the deliberative process during which a jury reaches its verdict. Post-submission substitution threatens that process. When a juror becomes disabled during deliberations, however, the trial court has limited options. Granting a mistrial may seem an unnecessary waste of scarce resources. Granting a continuance may be impractical. In interpreting a federal rule of criminal procedure similar to Rule 5–605, *see* Fed.R.Crim.P. 24(c) (prior to 1999 amendment), federal courts have recognized competing values and attempted to reconcile them. Recent revisions to that rule, Fed. R.Crim.P. 24(c)(3) (effective December 1, 1999) (authorizing retention of alternate jurors during deliberations and postsubmission substitution), apparently reflect a considered judgment that under some circumstances post-submission substitution is not incompatible with a defendant's right to an impartial jury. *But see Standards for Crim. Just., supra*, at 176 ("Although the goals of efficiency and expediency are served by a system which permits substitution of alternates even after deliberations have begun and although

it has been held constitutionally permissible, this approach was rejected in this standard...."). State courts appear to have been more willing than federal courts to view post-submission substitution as reversible error or error that must be proven harmless. *See Commonwealth v. Saunders,* 454 Pa.Super. 561, 686 A.2d 25, 28 (1996); *People v. Burnette,* 775 P.2d 583, 590 & n. 10 (Colo. 1989) (en banc) (interpreting Colorado procedural rule prior to amendment, noting a statute contained similar language); *see generally Hayes v. State,* 355 Md. 615, 735 A.2d 1109, 1111–1120 (1999) (describing the history of the Maryland equivalent of Rule 5–605, examining federal cases dealing with post-submission substitution, describing the state courts as less unanimous in their view, and listing several approaches).

## A.

{10} A federal statute originally governed the use of alternate jurors during federal criminal trials. *See* Act of June 29, 1932, ch. 309, 47 Stat. 380, 381 (repealed 1948). The statute permitted substitution of alternate jurors prior to submission. *See id.* "The object of the statute was to prevent mistrials in criminal trials of long duration, where a juror dies or becomes so ill as to be unable to continue the performance of his duties." *American Tobacco Co. v. United States,* 147 F.2d 93, 117 (6th Cir.1944), *aff'd* 328 U.S. 781, 66 S.Ct. 1125, 90 L.Ed. 1575 (1946). Subsequently, the United States Supreme Court Advisory Committee on Rules of Criminal Procedure recommended Federal Rule of Criminal Procedure 24(c), *see* Lester B. Orfield, *Trial Jurors in Federal Criminal Cases,* 29 F.R.D. 43, 44–54 (1962) (describing the history of Rule 24), which continued the statutory practice of allowing alternate jurors to be substituted before submission. 2 Charles A. Wright, *Federal Practice and Procedure* § 388, at 384–85 (2d ed. 1982). Under the proposed rule the trial court had discretion to substitute an alternate juror. *See id.* at 386–87. Any substitution had to occur prior to the discharge of the alternate jurors and before the jury retired to deliberate. *See id.* at 390–91. The Advisory Committee also recommended Federal Rule of

Criminal Procedure 23(b). *See* Lester B. Orfield, *Trial By Jury in Federal Criminal Procedure,* 1962 Duke L.J. 29, 66–73 (describing the history of Rule 23). This proposed rule permitted a jury of less than twelve if the parties stipulated in writing at any time before the verdict and the court approved. *See id.* at 66. Both rules, adopted in 1946, "alleviate[d] the effect of the common law rule" of declaring a mistrial, forming a new jury, and beginning trial de novo. David Paul Nicoli, Comment, *Federal Rules of Criminal Procedure 23(b) and 24(c): A Proposal to Reduce Mistrials Due to Incapacitated Jurors,* 31 Am.U.L.Rev. 651, 651 (1982).

{11} In 1981, the Judicial Conference Advisory Committee on the Federal Rules of Criminal Procedure proposed significant amendments to Rules 23 and 24. *See* Fed. R.Crim.P. 23, 24, preliminary draft of proposed amendments, *reprinted in* 91 F.R.D. 289, 337–45 (1982). "The Advisory Committee has been giving consideration to the serious problem which arises when a juror is lost after deliberations have commenced following a lengthy trial." 91 F.R.D. at 337. The proposed amendment to Rule 24(c) would have permitted the retention of alternate jurors and authorized post-submission substitution. *See* 2 Wright, *supra,* § 388, at 393 n. 25. The proposed amendment to Rule 23(b) authorized "the trial judge to accept a verdict delivered by eleven jurors if the court finds it necessary to excuse a juror for just cause after the jury has retired to deliberate." Nicoli, *supra,* at 665. The Advisory Committee eventually concluded that the amendment to Rule 23(b) was preferable and abandoned the proposed amendment to Rule 24(c); Rule 23(b) was amended in 1983. *See* 2 Wright, *supra,* § 388, at 120 (Supp.1999).

{12} The actions of the Advisory Committee reinforced the view that the federal rules of criminal procedure did not authorize post-submission substitution. *See United States v. Quiroz–Cortez,* 960 F.2d 418, 420 (5th Cir. 1992) (noting the proper procedure after the 1983 amendment to Rule 23(b) was "to proceed with an eleven-person jury"). Nevertheless, in exceptional cases, federal courts affirmed convictions following post-submis-

sion substitution. The circumstances surrounding the substitution were dispositive. *See generally United States v. Hillard,* 701 F.2d 1052, 1056–61 (2d Cir.1983) (discussing post-submission substitution prior to 1983). "[P]ending a change in [Rule 24(c)], juror substitution should be permitted only in complex cases where thorough precautions are taken to ensure that the defendants are not prejudiced." *Hillard,* 701 F.2d at 1061.

{13} In *United States v. Kopituk,* 690 F.2d 1289, 1310 (11th Cir.1982), for example, the trial court had discharged the alternate jurors after four days of deliberations in which the alternates were sequestered. Upon discharge, the court "instructed the alternate jurors not to discuss the case with anyone" and "to avoid all newspaper and television coverage of the trial 'in the slim possibility that we might still call you.'" *Id.* at 1306. Six days later a juror was found mentally ill and unfit to serve. *See id.* at 1306–07. Over objection by defense counsel, the court substituted the first alternate juror. *See id.* at 1307. Prior to substitution, the court extensively examined the alternate juror as to her continued fitness to serve and also examined the remaining eleven jurors regarding their ability to begin deliberating anew. *See id.* The court reinstructed the reconstituted jury in full and emphasized that the jury should disregard all previous deliberations and begin deliberations anew. The Eleventh Circuit affirmed the defendant's convictions, concluding post-submission juror substitution did not prejudice the defendant because "adequate safeguards, such as instructing the reconstituted jury that they must begin deliberating anew, [had] been taken." *Id.* at 1309. "[T]he substituted juror procedure upheld herein is a narrowly limited exception to the rule, applicable only in extraordinary situations and, even then, only when extraordinary precautions are taken, as was done [in this case] to ensure that the defendants are not prejudiced." *Id.* at 1311.

{14} Since 1983, federal courts have continued to express the view that substitution of an alternate juror during mid-deliberations violates Rule 24(c) but that violation of the rule is not reversible error unless it prejudices the defendant. *See, e.g., United*

*States v. Guevara*, 823 F.2d 446, 448 (11th Cir.1987) (noting that facts fell within a narrow exception and that defendants demanded that the court substitute the alternate juror); *United States v. Josefik*, 753 F.2d 585, 587 (7th Cir.1985) (noting lack of prejudice and that defendants had consented to the alternate's service). In analyzing post-submission substitution, however, federal courts have been cognizant of a defendant's right to a trial by jury guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution.

The Supreme Court has not specifically ruled on the constitutionality of substituting an alternate juror after jury deliberations have begun. Most of the federal courts that have addressed the issue, however, have held that when circumstances require, substitution of an alternate juror in place of a regular juror after deliberations have begun does not violate the Constitution, so long as the judge instructs the reconstituted jury to begin its deliberations anew and the defendant is not prejudiced by the substitution.

*Claudio v. Snyder*, 68 F.3d 1573, 1575 (3rd Cir.1995); *see also Miller v. Stagner*, 757 F.2d 988, 995 (9th Cir.1985) (holding California rule permitting post-submission substitution preserved the federal constitutional right to a jury trial). They have recognized that post-submission substitution creates a "danger that the other jurors will have 'already formulated positions or viewpoints or opinions' in the absence of the alternate juror and then pressure the newcomer into passively ratifying this predetermined verdict, thus denying the defendant the right to consideration of the case by twelve jurors." *Quiroz–Cortez*, 960 F.2d at 420 (quoting *United States v. Phillips*, 664 F.2d 971, 995–96 (5th Cir.1981)).

{15} In 1998, the Advisory Committee again proposed amendments to Rule 24(c) that permitted the retention of alternate jurors and authorized post-submission substitution. *See Hayes*, 735 A.2d at 1114; *see also* Fed.R.Crim.P. 24(c) advisory committee note of 1999. "Although Rule 23 makes provision for returning a verdict with 11 jurors, the Committee believed that the judge should have the discretion in a particular case to retain the alternates, a practice not provided for under the current rule." Fed.R.Crim.P. 24(c) advisory committee report, *reproduced in* Court Rules, 119 S.Ct.Rep. 612, 615 (interim ed.1999). The proposed revisions to Rule 24(c) deleted references to pre-submission substitution and to discharging alternate jurors when deliberations have begun. *See* Fed.R.Crim.Proc. 24(c)(1). Rule 24(c)(3) now provides:

> When the jury retires to consider the verdict, the court in its discretion may retain the alternate jurors during deliberations. If the court decides to retain the alternate jurors, it shall ensure that they do not discuss the case with any other person unless and until they replace a regular juror during deliberations. If an alternate replaces a juror after deliberations have begun, the court shall instruct the jury to begin its deliberations anew.

These amendments became effective December 1, 1999. As a result of these amendments, our Rule 5–605 no longer tracks the federal rule.

**B.**

{16} Like federal courts, state "courts have generally refused to imply from [provisions allowing alternate jurors to take the place of original jurors who become incapacitated] the authority to make a postsubmission substitution." David B. Sweet, Annotation, *Propriety, Under State Statute or Court Rule, of Substituting State Trial Juror with Alternate After Case Has Been Submitted to Jury*, 88 A.L.R.4th 711, 720 (1991). Some courts have declined to infer from a statute authorizing pre-submission substitution authority for post-submission substitution and refused to review for prejudice. *See Woods v. Commonwealth*, 287 Ky. 312, 152 S.W.2d 997, 998–99 (1941); *State v. Dushame*, 136 N.H. 309, 616 A.2d 469, 470–72 (1992); *State v. Lehman*, 108 Wis.2d 291, 321 N.W.2d 212, 222–23 (1982) A few state courts have held post-submission substitution reversible error as a matter of state constitutional law. In *People v. Ryan*, 19 N.Y.2d 100, 278 N.Y.S.2d 199, 224 N.E.2d 710, 713 (1966), the New York Court of Appeals held that the state

constitution "as it has been construed, prohibits the substitution of an alternate juror—in effect a 13th juror—after the jury has begun its deliberation." For this reason, the New York Court of Appeals reversed convictions based on jury verdicts in which an alternate had been substituted after submission, notwithstanding statutory authorization for post-submission substitution. *See id., see also State v. Bobo,* 814 S.W.2d 353, 356 (Tenn.1991) (holding post-submission substitution violated not only the Tennessee rule of criminal procedure but also the Tennessee state constitutional guarantee of the right to trial by jury).

{17} "If a post-submission substitution has been found to be erroneous, [most] courts next focus on the extent to which the error is prejudicial." *Saunders,* 686 A.2d at 28. Some states might be characterized as following the federal approach. *See generally Hayes,* 735 A.2d at 1120 (characterizing that approach as "an expansive harmless error or presumptive non-prejudice doctrine"). Other courts have suggested that the prosecution must show the trial court took precautions to avoid prejudice. *See Saunders,* 686 A.2d at 27–30; *Burnette,* 775 P.2d at 587–88; *see also Hayes,* 735 A.2d at 1121 (holding in part that post-submission substitution required reversal, absent record evidence the alternate juror had remained qualified to serve); *cf. Plate v. State,* 925 P.2d 1057, 1059–62 (Alaska Ct.App.1996) (holding that post-submission substitution required reversal while acknowledging that under other circumstances deviation from the Alaska rule of criminal procedure might not be reversible error).

{18} In *Burnette,* the Colorado Supreme Court concluded the recall of a discharged alternate juror and post-submission substitution "raise[d] a presumption of prejudice to the defendant's right to a fair trial." 775 P.2d at 588.

> Where an alternate juror is inserted into a deliberative process in which some jurors may have formed opinions regarding the defendant's guilt or innocence, there is a real danger that the new juror will not have a realistic opportunity to express his [or her] views and to persuade others.

Moreover, the new juror will not have been part of the dynamics of the prior deliberations, including the interplay of influences among and between jurors, that advanced the other jurors along their paths to a decision. Nor will the new juror have had the benefit of the unavailable juror's views. Finally, a lone juror who cannot in good conscience vote for conviction might be under great pressure to feign illness in order to place the burden of decision on an alternate.

*Id.* (citations omitted). In *Saunders,* the Pennsylvania Superior Court also determined the proper analysis was to presume post-submission substitution prejudiced a defendant. *See* 686 A.2d at 28. "[T]his presumption may only be rebutted by evidence which establishes that sufficient protective measures were taken to insure the integrity of the jury function." *Id.*

> [The] solution begins with the trial court, prior to impaneling the alternate juror, extensively questioning the alternate and remaining jurors. The trial court must insure that [the] alternate has not been exposed to any improper outside influences and that the remaining regular jurors are able to begin their deliberations anew.

*Id.* at 29. The court must inform the reconstituted jury "that the discharge of the original juror 'was entirely personal and had nothing to do with the discharged juror's views on the case or the juror's relationship with fellow jurors.'" *Id.* (quoting Sweet, *supra,* § 21a, at 793). The trial court also must direct the reconstituted jury to begin deliberations anew. In the absence of these or similar procedural safeguards, the Pennsylvania Superior Court concluded in *Saunders* that the state had not maintained "the integrity of the jury function," and "the resulting verdict [could not] be accepted." *Id.* at 30. Similarly, the Colorado Supreme Court affirmed its Court of Appeals' decision reversing the defendant's convictions in *Burnette*. *Burnette,* 775 P.2d at 591 ("[T]he presumption of prejudice was not overcome ....").

{19} In *People v. Page,* 88 N.Y.2d 1, 643 N.Y.S.2d 1, 665 N.E.2d 1041, 1045–46 (1996), the New York Court of Appeals held that post-submission substitution is reversible er-

ror even if the defendant orally consents to the substitution. "[T]he statutory procedure for consenting to substitution of a deliberating juror mirrors the requirements contained in the [New York] Constitution for waiving a jury trial—written consent signed personally by the defendant in open court and in the presence of the court." *Id.* 643 N.Y.S.2d 1, 665 N.E.2d at 1045. The court also noted that "[t]he right to trial by jury guaranteed by the Federal Constitution, however, does not encompass the common-law right to a trial by 12 jurors. Thus, improper replacement of an alternate for a deliberating juror in violation of [federal] [R]ule 24(c) does not implicate a constitutional right." *Id.* 643 N.Y.S.2d 1, 665 N.E.2d at 1046 (citation omitted). *Cf. Bobo,* 814 S.W.2d at 359 (indicating that a defendant can waive the state constitutional right to a trial by jury and consent to post-submission substitution, provided that the waiver is a "voluntary relinquishment" of the right).

{20} Some states have authorized post-submission substitution by statute or rule. *See, e.g.,* Cal.Penal Code § 1089 (West 1985); N.J.R.Ct. § 1:8–2(d). Changes in procedural rules may be the most likely future development in state court practice. *See Hayes,* 735 A.2d at 1119 n. 2 (listing eleven states as having rules or statutes comparable to the recently amended federal rule). Changes in statutes and rules, however, may not be dispositive. The Colorado Supreme Court recently held that the procedure itself created a presumption of prejudice; the court reaffirmed *Burnette. See Carrillo v. People,* 974 P.2d 478, 490–91 (Colo.1999) (en banc). In a state where the procedure implicates a state constitutional provision, such as New York or Tennessee, express authorization for post-submission substitution by statute or rule may not ensure that the procedure is compatible with a defendant's right to an impartial jury under the state constitution.

### C.

{21} Some changes in our rule may be constitutionally permissible. *Cf. Page,* 643 N.Y.S.2d 1, 665 N.E.2d at 1045 (describing a statutory requirement for defendant's written consent as one that "mirrors" the state constitutional requirement). *See generally People v. Collins,* 17 Cal.3d 687, 131 Cal. Rptr. 782, 552 P.2d 742, 745–47 (1976) (holding California statute allowing substitution of alternate juror ·after submission proper under federal and state constitutions when construed as requiring deliberations to begin anew). Changes in the rule may be desirable. *See* Fed.R.Crim.P. 24(c)(1), (3). In the absence of a rule authorizing post-submission substitution, however, we interpret our rule as not authorizing post-submission substitution. *Cf. Hayes,* 735 A.2d at 1120. "We are not at liberty, in a decisional context, to change the language of [our rule] ... If there is to be a change in the rule or the policy underlying the rule, it must come through the normal rule-making process." *Id.*

{22} We understand the federal cases to have construed the federal rule to avoid any question under the federal constitution that a defendant has been denied his or her right to a fair and impartial jury by post-submission substitution. *See Claudio,* 68 F.3d at 1575. A constitutional violation appears to have been avoided under the federal rule by requiring the defendant to show prejudice as a result of the substitution rather than presuming prejudice. A defendant shows prejudice by proving an absence of procedural safeguards. Prejudice, however, is not shown when the facts surrounding the replacement of an alternate juror persuade appellate courts that the handling of the reconstituted jury was adequate to ensure a fair and impartial jury. *See id.* at 1577. State cases reflect different state constitutional provisions and statutes but, in general, also appear to construe rules comparable to Rule 5–605 to protect a defendant's right to a fair and impartial jury and to avoid any question under the relevant state constitution that a defendant has been denied that right. *See Page,* 643 N.Y.S.2d 1, 665 N.E.2d at 1046; *Bobo,* 814 S.W.2d at 356. State courts might be viewed as requiring proof similar to the federal courts to justify post-submission substitution but characterizing the requirement as an obligation to overcome prejudice to avoid reversal, *see Burnette,* 775 P.2d at 588, while federal courts might be viewed as recognizing exceptional circumstances that

authorize a departure from the text of the federal rule. *See Hillard,* 701 F.2d at 1061. Under both approaches, post-submission substitution is an exception to a rule of criminal procedure, which protects constitutional rights. For this reason, both approaches require adequate procedural safeguards; absent such precautions at the trial court level, the text of the rule supports reversal.

{23} We also interpret our rule to avoid any question that it offends either the state or federal constitution. We therefore interpret our rule to require reversal unless in the circumstances of a particular case the trial court has taken sufficient measures to protect the defendant's right to proper jury deliberations. We hold that post-submission substitution is error under Rule 5–605; it is error that creates a presumption of prejudice; the state must show under the circumstances of a particular case that the trial court took adequate steps to ensure the integrity of the jury process.

{24} We believe our construction of Rule 5–605 is consistent with our case law as well as good policy. In *State v. McCarter,* 93 N.M. 708, 711, 604 P.2d 1242, 1245 (1980), we held that when communications between the trial court and the jury "occur in the absence of the accused, a presumption of prejudice arises, and the State must demonstrate that the communication did not affect the verdict." The Court of Appeals extended this holding to apply to problems created by the unauthorized presence of an alternate juror in the jury room, *see State v. Coulter,* 98 N.M. 768, 770, 652 P.2d 1219, 1221 (Ct.App. 1982), as well as a trial court's decision to excuse a seated juror because of an unauthorized contact, *see State v. Pettigrew,* 116 N.M. 135, 140–41, 860 P.2d 777, 782–83 (Ct. App.1993). We believe applying a presumption of prejudice analysis to problems arising out of improper post-submission substitution is a logical and appropriate extension of this line of cases. We believe adopting a presumption of prejudice enlarges the trial court's options without compromising a defendant's federal constitutional right to a trial by jury. This approach balances a defendant's right to trial by jury and the need to conserve scarce resources.

{25} In this case, the presumption of prejudice created by post-submission substitution remains, even after we consider the measures the trial court took to protect the deliberative process. The trial court instructed the reconstituted jury to "bring [the alternate juror] up to speed" and also to "start things over again ." This instruction gave the jury conflicting messages: (1) the original jurors should educate the alternate on each of the juror's positions and then continue deliberating; (2) the jury should begin all deliberations anew. The lapse of time between the first and second periods of deliberation might have facilitated the jury's ability to begin deliberations anew. Nevertheless, the second alternate had not been retained during deliberations and he was not re-examined on his ability to serve as a juror. The court did not question the reconstituted jury on its ability to deliberate anew; nor did the court re-instruct the jury on the elements of the crimes charged. We conclude the trial court's measures were not sufficient to protect Defendant's right to trial by jury, particularly the right to a verdict properly reached.

**D.**

{26} We now return to the State's contention that Defendant failed to bring the issue he has argued on appeal to the trial court's attention, because he consented to the first alternate and never relied on Rule 5–605 in objecting to the second alternate. We agree with Defendant that the facts of this case raise a question concerning his constitutional rights to an impartial jury. *See* U .S. Const. amends VI, XIV; N.M. Const. art. II, §§ 12, 14 (as amended 1994). "There is no question that the right to trial by a fair and impartial jury is a fundamental right." *See State v. Escamilla,* 107 N.M. 510, 515, 760 P.2d 1276, 1281 (1988). "[M]ost rights, however fundamental, may be waived or lost by the accused," *id.,* but "[t]he State has the burden of establishing that a defendant waived his [or her] constitutional rights and every reasonable presumption against waiver is indulged." *State v. Salazar,* 1997–NMSC–044, ¶ 62, 123 N.M. 778, 945 P.2d 996. Nevertheless, we do require that issues be raised at trial in order to be raised on appeal. *See*

*generally State v. Ross*, 1996–NMSC–031, 122 N.M. 15, 22–23, 919 P.2d 1080, 1087–88 (discussing preservation of constitutional right of confrontation).

{27} Waiver is not an issue in this case. Defendant never made a "voluntary, knowing and intelligent waiver," *State v. Gilbert*, 98 N.M. 530, 534, 650 P.2d 814, 818 (1982), of the procedural safeguards which ensure his right to a fair and impartial jury. In fact, until this opinion is final, the quantity and quality of the procedural safeguards required by Rule 5–605 will remain a matter of first impression. We cannot characterize Defendant's willingness to accept the first alternate juror as a waiver of his right to a fair and impartial jury while the protection provided by that rule remained unclear.

{28} The State's reliance on Defendant's failure to rely on Rule 5–605 also is misplaced. The trial court appears to have understood the need for procedural safeguards and the requirement that the jury be instructed to deliberate anew. In fact, when describing the two options on how the court could proceed after the original juror fell ill, the court advised the parties that if the parties agreed to substitute the first alternate it would reinstruct the reconstituted jury on the law and also advise the jury to start deliberations all over again. Until Rule 5–605 is amended, the text of that rule would have provided no guidance on what procedural safeguards would have been appropriate under these circumstances. Defendant's objection to the second alternate was sufficient to preserve the appellate claim that in substituting that alternate, the trial court failed to protect his right to a fair and impartial jury.

{29} It is true that Defendant might have alerted the trial court to a deficiency in the procedural safeguards taken. *Cf. Hinger v. Parker & Parsley Petroleum Co.*, 120 N.M. 430, 442, 902 P.2d 1033, 1045 (Ct.App. 1995) (rejecting legal objection to jury instructions raised for the first time on appeal). We need not decide whether, after this opinion is final, a more specific objection than Defendant made in this case would be required to preserve error in the adequacy of particular safeguards taken prior to post-submission substitution. "The rules that govern the preservation of error for appellate review are not an end in themselves, rather they are instruments for doing justice." *Garcia ex rel. Garcia v. La Farge*, 119 N.M. 532, 541, 893 P.2d 428, 437 (1995). In this case, Defendant's objection to the second alternate juror alerted the trial court to the necessity for procedural safeguards that would protect Defendant's right to a fair and impartial jury.

## III.

{30} Defendant argues the evidence presented at trial was insufficient to establish he participated in the murder of Gentry, the attempted murder of Wise, and the kidnapping of Gentry and Wise. Defendant contends no physical evidence linked him to the shootings. He notes Wise was a drug dealer who had been high on crack and had a motive to lie to avoid trouble with the Vaughn/Davis family. He also notes his own statements to Hall and to the police served the purpose of protecting the Vaughn/Davis family. Defendant asserts these statements conflicted. He also argues there was no evidence supporting an inference of deception necessary for his kidnapping convictions. We review this claim of error because the Double Jeopardy Clause, U.S. Const. art. V, would bar retrial if Defendant's convictions are not supported by sufficient evidence. *See State v. Post*, 109 N.M. 177, 181, 783 P.2d 487, 491 (Ct.App.1989).

{31} We review the evidence to determine "whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Sutphin*, 107 N.M. 126, 131, 753 P.2d 1314, 1319 (1988). Under this standard, "[w]e view the evidence in the light most favorable to supporting the verdict and resolve all conflicts and indulge all inferences in favor of upholding the verdict." *State v. Hernandez*, 115 N.M. 6, 26, 846 P.2d 312, 332 (1993). We conclude the State introduced sufficient evidence to carry its burden of proof.

{32} Although the Defendant introduced conflicting evidence, such evidence "does not provide a basis for reversal because the jury is free to reject Defendant's version of the facts." *State v. Rojo*, 1999–NMSC–001, ¶ 19, 126 N.M. 438, 971 P.2d 829. Further, the fact finder resolves conflicts and determines weight and credibility. *See State v. Roybal*, 115 N.M. 27, 30, 846 P.2d 333, 336 (Ct.App.1992). We are not persuaded that the jury could not have believed Wise and Hall or that their testimony was inherently improbable. *See State v. Till*, 78 N.M. 255, 256, 430 P.2d 752, 753 (1967) (discussing inherent improbability). Additionally, we are not persuaded by Defendant's specific claim that there was no evidence supporting an inference of deception, a necessary element of his kidnapping convictions. "[K]idnapping can occur when an association begins voluntarily but where the defendant's real purpose is something other than the reason the victim voluntarily associate[s] with the defendant." *State v. Laguna*, 1999–NMCA–152, ¶ 13, 128 N.M. 345, 992 P.2d 896 (holding deceit was established when the defendant offered the victim a ride while concealing the intent to explore sexual involvement), *cert. denied*, No. 26,017, 128 N.M. 149, 990 P.2d 823 (1999). In this case, there was evidence from which the jury was entitled to find that Defendant entered the car with Wise and Gentry under the false premise of needing a ride and that he actually intended to murder Wise. This evidence supported the element of deception.

### IV.

{33} Defendant argues on appeal that the legislature did not intend multiple punishment for unitary conduct that results in kidnapping and murder. Defendant's argument arises from his constitutional rights to be free from double jeopardy. A double jeopardy analysis begins with determining whether the conduct supporting the convictions is unitary. *See Swafford v. State*, 112 N.M. 3, 13, 810 P.2d 1223, 1233 (1991). "When the conduct is unitary and the legislature does not expressly authorize multiple punishments, we apply a strict elements test." *State v. Varela*, 1999–NMSC–045, ¶ 40, 128 N.M. 454, 993 P.2d 1280. In this case, we need not determine whether the conduct was unitary because, when applying the strict elements test, there is no double jeopardy violation. Under the strict elements test, kidnapping is not subsumed by murder. Kidnapping has the element of restraining by deception, which is not an element of first degree murder and first degree murder has the element of killing, which is not an element of kidnapping. When the elements of the statutes are not subsumed within the other, there is a presumption the statutes punish distinct offenses. *See Swafford*, 112 N.M. at 14, 810 P.2d at 1234. Other indicia of legislative intent may rebut the presumption. *See id.* In this case, Defendant did not direct the Court's attention to other indicia of legislative intent. Upon the record and the arguments before us, we conclude there was no double jeopardy violation.

### V.

{34} The State presented sufficient evidence to support each and every element of the crimes of first degree murder, attempted murder, and kidnapping. Defendant's convictions do not violate his right to be free from double jeopardy. The trial court erred in recalling a discharged alternate juror without employing sufficient procedural safeguards. For these reasons, Defendant's convictions for first degree murder, attempted murder, and kidnapping are reversed, and we remand for further proceedings consistent with this opinion.

{35} **IT IS SO ORDERED.**

BACA, FRANCHINI, SERNA and MAES, JJ., concur.