This decision was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Please also note that this electronic decision may contain computer-generated errors or other deviations from the official paper version filed by the Supreme Court and does not include the filing date.

**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

**Filing Date: March 8, 2018**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                    **NO. S-1-SC-35981**

**MANUEL GARDNER,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Jacqueline D. Flores, District Judge**

Bennett J. Baur, Chief Public Defender
Allison H. Jaramillo, Assistant Appellate Defender
Santa Fe, NM

for Appellant


Hector H. Balderas, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellee

**DECISION**

**MAES, Justice.**

{1} Defendant Manuel Gardner was found guilty of first-degree murder and armed robbery for fatally shooting Richard Glass and robbing the National Jewelry Buyers store on Coors Boulevard in Albuquerque. The district court sentenced Defendant to life in prison, and Defendant filed a motion for new trial on the basis that the State had used perjured testimony to convict him. The district judge denied the motion.

{2} In this direct appeal, Defendant raises the following issues: (1) whether the district court erred in failing to instruct the jury on how to evaluate circumstantial evidence, (2) whether his conviction is based on sufficient evidence, (3) whether the State violated *Brady v. Maryland*, 373 U.S. 83 (1963), in failing to disclose jail records showing Defendant was not incarcerated in the same facility as Robin Thomas, and (4) whether the district court erred in failing to grant Defendant's motion for a new trial. We affirm the denial of Defendant's motion for new trial and affirm Defendant's convictions. Because Defendant raises no questions of law that New Mexico precedent does not already sufficiently address, we issue this non-precedential decision pursuant to Rule 12-405(B)(1) NMRA.

**I.     FACTS AND PROCEDURAL HISTORY**

{3} On July 19, 2013, Mr. Glass was working alone at the National Jewelry Buyers

(NJB) store on Coors Boulevard in Albuquerque. NJB buys jewelry from the public and pays cash, which was kept in a locked desk drawer. At 5:05 p.m., a man wearing baggy jean shorts, black tennis shoes with white trim, a black hooded sweatshirt (hoodie) with the hood pulled over his head, and a red bandanna covering his face entered the store, shot Mr. Glass three times with a 9 millimeter handgun, and took a money pouch from the desk drawer. The man then ran from the store and drove away in a white, four-door, police-type sedan parked on Coors Boulevard. Mr. Glass was dead as a result of the gunshot wounds by the time the police arrived.

{4}     No one directly witnessed the shooting of Mr. Glass; however, surveillance cameras inside the store captured the incident. Surveillance video from nearby businesses also captured the man walking around the area before the crime, but his face cannot be seen as it was covered by the hood of his sweatshirt.

{5}     Ruphay Penaloza was working nearby at Integrity Automotive (Integrity), a car dealership. Penaloza testified he heard three gunshots and then saw a man wearing a black hoodie and red bandanna running from the building towards Coors Boulevard. Penaloza walked across the side street between the businesses, looked inside the building, and saw a body. He then called 911.

{6}     Luis Fernandez was also at Integrity that day. Fernandez testified that when

he arrived around 2 p.m., he was unable to turn into the side street between NJB and Integrity because a white Crown Victoria with Texas license plates was stopped on Coors Boulevard in front of the NJB store. He testified that a portable gas can was on the car and that a man wearing a white tank top and a black or dark beanie was inside the car. Fernandez did not see any dents or markings on the car but recalled a window was down although it had been a rainy day. He described the man as "light-complected" and having "a broken nose or straight nose." Fernandez testified he heard gunshots and then saw the white car leave. However, on cross-examination he said he only heard the tires screech and did not actually see the car leave the scene. Another witness, Karina Luna, said that when she arrived at Integrity that day, she also saw a white car stopped in the turn lane on Coors Boulevard. She did not see a license plate on the car but recalled seeing the hazard lights on and a portable gas can on the car. A man with a black hoodie was sitting in or standing near the white car. Luna said Penaloza came in and told her someone had been shot across the street and they, along with another coworker, went across the street to see what had happened. They went inside the NJB store and saw a man on the floor, bleeding and unresponsive.

{7}     With few leads to go on, police sent local news media a portion of the

4

surveillance video showing the assailant and a description of the car. After the information was broadcast, police received many tips, and one led them to an individual named Garret King. King had been to another NJB store in Albuquerque on several occasions and drove a white Crown Victoria. After police interviewed King, they believed he did not have any connection to the murder.

{8} Virgie Russ contacted the police after she saw the video of the assailant on television. She lives at the end of a residential cul-de-sac in northwest Albuquerque and had recently noticed a white Crown Victoria parked on her street. On several occasions she watched the man park the car, get out, and jump the wall dividing the homes and the adjacent apartment complex. Russ believed this man moved like the man she saw on the video. Russ said the man wore glasses, but she never got a clear look at his face. She said the man almost always wore a black hooded sweatshirt, baggy jean shorts, and black tennis shoes with white trim. She called him "bird legs" because she thought his legs looked small.

{9} In response to Russ contacting the police, Albuquerque Police Officer Shawn Lockey went to Kingsway Drive on July 24, 2013, and found the white Crown Victoria. Officer Lockey saw a "reddish pinkish" bandanna inside the car. The driver's side window was missing, and a blanket covered the window. The car did

5

not have a license plate. Officer Lockey called Detective Kevin Sanchez to the scene.

{10} Detective Sanchez, along with another detective, arrived and saw the bandanna inside the car. He also saw a pay stub with Defendant's name on it. Sanchez photographed the car and the bandanna. Investigation of Defendant's name led Sanchez to the apartment complex adjacent to Russ's home. Detective Sanchez began surveillance of the complex and saw the white Crown Victoria on two occasions. On the second occasion, Sanchez saw an individual, later identified as Defendant, exit the apartment with two children and get into the white car.

{11} Defendant's ex-girlfriend Ashley Sanchez lived in the apartment with their two children. Sanchez said Defendant lived in the apartment recently, but his drug use and unemployment caused problems with their relationship and they had broken up. Defendant still had belongings at the apartment and would watch the children sometimes when Sanchez was at work. Sanchez identified the white Crown Victoria as Defendant's and said he parked it on Kingsway Court because it would have been towed if parked at the apartment complex without a license plate. Police obtained a warrant to search the apartment and found a pair of jean shorts and black tennis shoes with white trim, which Sanchez identified as belonging to Defendant.

{12} APD Detective Holly Anderson interviewed Defendant on August 10, 2013,

6

and a video of the interview was introduced into evidence. In the interview Defendant denied committing the crime. He said he had sold jewelry to Mr. Glass at the NJB store on three or four prior occasions but had not done so in the last four or five months. At trial, Detective Anderson pointed out particular similarities in the jeans and shoes worn by the shooter and those found by police that belonged to Defendant. Anderson also noted that the man in the video appears to adjust something on his face and that Defendant wears glasses.

{13}     Romie Salem was the owner of the NJB store at the time of the incident. Salem testified that when someone comes to the store to sell jewelry, they take down the seller's information from their identification, such as a driver's license or passport. This information was kept in their records. Through Salem, the State introduced invoices that showed Defendant had sold jewelry at the NJB on Coors on nine different occasions from January through June 2013. Salem testified the money paid to sellers was kept in a locked drawer of the desk where Mr. Glass sat.

{14}     Shannon Villegas testified that he was arrested for armed robbery in June of 2014 and was in the Metropolitan Detention Center (MDC) at the same time as Defendant. Villegas testified that Defendant would speak with Villegas's cell mate, who was also charged with murder. Villegas said Defendant would talk about

7

Defendant's case "many times." He remembered Defendant specifically saying on more than one occasion that he went in and "shot the dude in the chest." Villegas also said Defendant said he got $1,800 and spent it on heroin. Villegas said he never heard Defendant deny killing anybody. On cross-examination, Villegas said he has a "real bad memory" and defense counsel was able to point out several inconsistencies in his testimony from what he had initially told the police.

{15} Lastly, Thomas testified that he was incarcerated in the Polk County Detention Center (PCDC) in Texas along with Defendant around the time of October 2013. Thomas was transferred to PCDC due to overcrowding at MDC. He said that while he was in PCDC, he overheard Defendant say that he robbed the NJB store and "blasted the guy." Thomas said that he himself had sold jewelry at the NJB store on many occasions and had tried to sell some jewelry there the day after the murder. Thomas admitted to having twenty-three felony convictions including identity theft, fraud, forgery, and drug trafficking. When Thomas said that he was released from PCDC in October, defense counsel asked him if he was aware that Defendant was not transferred to PCDC until November, after Thomas said he was released. Thomas said, "Maybe I got my days wrong, or whatever, but, I mean, I know–that's why I know him; it was from Texas." Both Villegas and Thomas said they did not receive

anything for testifying at trial.

{16} No weapon was ever found during the investigation.

{17} At the close of trial, Defendant requested that two instructions on circumstantial evidence be given to the jury: UJI 14-5001 and UJI 14-5002 NMRA. The first, UJI 14-5001, explains direct and circumstantial evidence and that the law makes no distinction between the two but only requires that the jury be satisfied of the defendant's guilt beyond a reasonable doubt from all the evidence. The second, UJI 14-5002, instructs the jury that they cannot find the defendant guilty of a crime based on circumstantial evidence alone, "unless the chain of circumstances excludes every other reasonable explanation except the defendant's guilt beyond a reasonable doubt." The use notes for both instructions state that "[n]o instruction on this subject shall be given." The district judge denied the two instructions on that basis and gave the jury UJI 14-5060, the required instruction on the beyond-a-reasonable-doubt standard of proof. The jury found Defendant guilty of first-degree murder (willful and deliberate) contrary to NMSA 1978, Section 30-2-1(A)(1) (1994) and armed robbery (robbery while armed with a deadly weapon) contrary to NMSA 1978, Section 30-16-2 (1973). The district court sentenced Defendant to life imprisonment for the first-degree murder conviction and ten years for the armed robbery conviction.

9

Defendant filed a motion for new trial claiming he was not in PCDC at the same time as Thomas and, therefore, Thomas committed perjury when he testified that he overheard Defendant admit to the crime while in PCDC. Defendant attached an exhibit to the motion which appears to be an MDC record showing that Defendant was in PCDC from November 8, 2013, through December 12, 2013. Defendant requested a new trial in light of the perjured testimony put on by the State. After a hearing, the district judge denied the motion.

{18} Defendant appeals directly to this Court under Rule 12-102(A)(1) NMRA (providing a right to direct appeal when a sentence of life imprisonment has been imposed).

**II.    DISCUSSION**

**A.    Defendant's Request for Jury Instructions on Circumstantial Evidence**

{19} Defendant argues that the evidence presented against him was almost entirely circumstantial and that the jury should have been instructed with UJI 14-5001 and UJI 14-5002. Defendant recognizes the use notes for the two instructions state to not use the instructions but argues they are still necessary to properly guide the jurors on how to evaluate circumstantial evidence and that without this guidance, the jury is susceptible to misinterpreting the evidence and misapplying the beyond-a-reasonable-

10

doubt standard. Defendant contends that had the jury been given the two requested instructions, it is likely they would have acquitted him.

{20} Whether a jury instruction was properly denied is a mixed question of law and fact that we review de novo. *See State v. Gaines*, 2001-NMSC-036, ¶ 4, 131 N.M. 347, 36 P.3d 438. At trial, the two instructions were proffered and briefly discussed before the district judge denied them, and this was sufficient to preserve the issue for appellate review. *See* Rule 5-608(D) NMRA; *State v. Jernigan*, 2006-NMSC-003, ¶ 10, 139 N.M. 1, 127 P.3d 537.

{21} In a criminal case, the district court must instruct the jury upon all questions of law essential for a conviction of any crime with which the defendant is charged. *See State v. Osborne*, 1991-NMSC-032, ¶ 10, 111 N.M. 654, 808 P.2d 624. In addition, "a defendant is entitled to have his or her theory of the case submitted to the jury under proper instructions where the evidence supports it." *State v. Lucero*, 1998-NMSC-044, ¶ 5, 126 N.M. 552, 972 P.2d 1143. Failure to give a requested instruction to which the defendant is entitled constitutes reversible error. *See State v. Ellis*, 2008-NMSC-032, ¶ 12, 144 N.M. 253, 186 P.3d 245. Jury instructions are sufficient if they fairly and correctly state the applicable law. *See State v. Rushing*, 1973-NMSC-092, ¶ 20, 85 N.M. 540, 514 P.2d 297.

{22} New Mexico used to instruct jurors that "where the state relies solely upon circumstantial evidence to prove its case, such evidence must be inconsistent with any reasonable hypothesis of the defendant's innocence." *State v. Rice*, 1954-NMSC-037, ¶ 15, 58 N.M. 205, 269 P.2d 751; *see also State v. Easterwood*, 1961-NMSC-084, ¶ 5, 68 N.M. 464, 362 P.2d 997; *State v. Peden*, 1973-NMCA-095, ¶ 7, 85 N.M. 363, 512 P.2d 691. In *State v. Bell*, this Court announced its abandonment of the traditional distinction between direct and circumstantial evidence. 1977-NMSC-013, ¶ 9, 90 N.M. 134, 560 P.2d 925. Since *Bell*, we have reaffirmed on several occasions that the law in New Mexico does not recognize a difference between the two types of evidence and that the fact-finder need only apply the reasonable doubt standard of review to the evidence, no matter the type. *See, e.g.*, *State v. Reymundo Carlos Garcia*, 2005-NMSC-017, ¶ 20, 138 N.M. 1, 116 P.3d 72; *State v. Graham*, 2005-NMSC-004, ¶ 9-10, 137 N.M. 197, 109 P.3d 285; *State v. Brown*, 1984-NMSC-014, ¶ 7, 100 N.M. 726, 676 P.2d 253.

{23} It is settled law in New Mexico that instructions on circumstantial evidence are not to be given. *See State v. Smith*, 1979-NMSC-020, ¶ 35, 92 N.M. 533, 591 P.2d 664; *State v. Williams*, 1978-NMCA-065, ¶ 5, 91 N.M. 795, 581 P.2d 1290. We find no basis to depart from settled law in this case and reiterate that the mandatory

12

instruction to the jury on the reasonable doubt standard found in UJI 14-5060 accurately and sufficiently instructs the jurors on the essential law. Additional instructions defining the types of evidence or the reasonable hypothesis test are confusing and do not help the jury. Accordingly, we find the district court properly denied the two requested instructions.

**B.** **There Was Sufficient Evidence for the Jury to Convict Defendant of First-Degree Murder and Armed Robbery**

{24} Defendant next argues that the evidence presented by the State was insufficient to support his conviction. He contends that most of the evidence was based on mere coincidence and that the jury had to speculate and form conjectures in order to draw the necessary inferences needed to conclude that he was the perpetrator. In reviewing the sufficiency of the evidence, we determine "whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Jose Pedro Garcia*, 2011-NMSC-003, ¶ 5, 149 N.M. 185, 246 P.3d 1057 (internal quotation marks and citation omitted). The evidence is viewed "in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. We do not weigh the evidence or substitute

our judgment for that of the fact-finder but must determine whether there was sufficient evidence to support the verdict. *See State v. Chavez*, 2009-NMSC-035, ¶ 11, 146 N.M. 434, 211 P.3d 891. As long as a rational jury could have found beyond a reasonable doubt the essential facts required for a conviction, we will not upset a jury's conclusions. *See State v. Duran*, 2006-NMSC-035, ¶ 5, 140 N.M. 94, 140 P.3d 515.

{25} Defendant was charged with first-degree murder contrary to Section 30-2-1(A)(1). To meet its burden of proof that Defendant committed first-degree murder, the State had to prove that (1) Defendant killed Mr. Glass, (2) the killing was with the deliberate intention to take away his life, and (3) this occurred in New Mexico on or about the 19th day of July, 2013. *See* UJI 14-201. To convict Defendant of armed robbery contrary to Section 30-16-2, the State was required to prove that (1) Defendant committed a robbery and (2) did so while armed with a deadly weapon. *See* § 30-16-2; UJI 14-1621 NMRA.

{26} When the evidence is viewed as a whole, we find that a rational jury could have found beyond a reasonable doubt that Defendant was the man in the video and that Defendant shot Mr. Glass in the chest with the deliberate intention to take away his life. The State presented evidence that Defendant owned and frequently wore

14

identical shorts and shoes to that of the person in the video. Detective Anderson testified that in the video footage, the man seemed to be adjusting his glasses and that Defendant wore glasses. The State also presented evidence that Defendant owned and drove a white Ford Crown Victoria that is identical to the car witnesses said they saw that day and that appears in the video. Defendant told police he had sold jewelry to Mr. Glass at the NJB store on three or four occasions in the past year. The State presented receipts showing Defendant went to the NJB store nine times, the last occasion being less than a month before the crime occurred. A witness living next to the apartment complex where Defendant's two children and ex-girlfriend lived and where Defendant used to live said that she had seen a man parking a white Crown Victoria in her neighborhood weeks before the crime and that the man moved like the person she saw in the surveillance camera footage shown on the news. The police found Defendant's car parked near the witness's house and saw a reddish bandanna inside the car. The surveillance video footage of the crime and the man walking around the area before the crime was introduced into evidence. The jurors could have viewed the video footage and reasonably concluded it was Defendant. The jury could reasonably infer that the shooter was familiar with the NJB store and knew exactly where to find the money. It can also be reasonably inferred that the shooter intended

to kill Mr. Glass when, upon entering the store, and without any provocation, he immediately pulled out his handgun and shot Mr. Glass three times in the chest. *See Duran*, 2006-NMSC-035, ¶ 8 ("Deliberate intent may be inferred from the particular circumstances of the killing . . . .").

{27}   Finally, Villegas testified he heard Defendant admit to the crime and provided details such as the victim was a "jewelry store clerk" and was shot in the chest. Though neither Villegas and especially Thomas were very credible witnesses, "the fact finder resolves conflicts and determines weight and credibility." *State v. Sanchez*, 2000-NMSC-021, ¶ 32, 129 N.M. 284, 6 P.3d 486.

{28}   The evidence, when viewed in accordance with the standard of review, is sufficient to support the jury's finding that Mr. Glass was shot with the deliberate intent to kill and that Defendant was the shooter. Also, there was sufficient evidence to prove, while armed with a deadly weapon, that Defendant robbed the NJB store on Coors Boulevard in Albuquerque.

**C.   Defendant's Rights Under *Brady* Were Not Violated**

{29}   In *Brady*, the United States Supreme Court held that a defendant's due process rights are violated when the prosecution suppresses favorable evidence. *See* 373 U.S. at 87. On appeal, Defendant argues that the State failed to disclose the MDC records

16

which showed that he was not housed in PCDC at the same time as Thomas and that this violated the *Brady* rule requiring disclosure of exculpatory evidence. *Id.* Defendant claims that the State knew or should have known that Thomas was not in PCDC at the same time as Defendant because the State is presumed to know a defendant's whereabouts when he is in custody. *See State v. Tartaglia*, 1990-NMCA-045, ¶ 4, 109 N.M. 801, 791 P.2d 76. Because the State used Thomas's perjured testimony to convict Defendant, he claims he did not receive a fair trial.

{30} An alleged *Brady* violation constitutes a charge of prosecutorial misconduct. *See State v. Turrietta*, 2013-NMSC-036, ¶ 35, 308 P.3d 964. "When an issue of prosecutorial misconduct is preserved by a timely objection at trial, we review the trial court's ruling on a claim under the deferential standard of abuse of discretion, because the trial court is in the best position to evaluate the significance of any alleged prosecutorial errors." *State v. Allen*, 2000-NMSC-002, ¶ 95, 128 N.M. 482, 994 P.2d 728 (internal quotation marks and citation omitted). When the district court did not have the opportunity to rule on a claim of prosecutorial misconduct because the defendant did not object in a timely manner, we review the claim on appeal for fundamental error. *Id.*

{31} This issue of the jail records and Thomas's testimony was brought to the

17

district court's attention for the first time in Defendant's motion for a new trial. In the motion, Defendant did not claim the prosecutor failed to disclose the jail records or knew that Thomas was not in PCDC at the same time as Defendant. At trial, Defendant did not move to exclude Thomas from testifying or object when Thomas testified. A motion for new trial is not sufficient to preserve an issue that was not otherwise raised during trial proceedings. *See State v. Pacheco*, 2007-NMSC-009, ¶¶ 7-8, 141 N.M. 340, 155 P.3d 745 (determining that because the defendant raised his claim of error for the first time in a motion for a new trial, the claim was not properly preserved for appellate review); *see also* Rule 12-321 NMRA ("To preserve an issue for review, it must appear that a ruling or decision by the trial court was fairly invoked."). Because Defendant did not raise the issue of prosecutorial misconduct in a timely manner, we review the claim on appeal for fundamental error. *Allen*, 2000-NMSC-002, ¶ 95.

{32} "Prosecutorial misconduct rises to the level of fundamental error when it is so egregious and had such a persuasive and prejudicial effect on the jury's verdict that the defendant was deprived of a fair trial." *Id.* (internal quotation marks and citations omitted). Put another way, "[a]n error is fundamental if there is a reasonable probability that the error was a significant factor in the jury's deliberations in relation

18

to the rest of the evidence before them." *State v. DeGraff*, 2006-NMSC-011, ¶ 21, 139 N.M. 211, 139 P.3d 61. Even assuming Thomas committed perjury, we are not convinced his testimony had such a persuasive and prejudicial effect on the jury's verdict that Defendant was deprived of a fair trial. First, defense counsel effectively tarnished Thomas's credibility as a witness. This was reflected in the order denying the motion for new trial in which the district judge stated that "it was clear that the jury did not find [Thomas's] testimony persuasive and did not consider it in making their decision." Second, when Thomas's testimony is considered within the context of all the evidence presented, we are not persuaded that Thomas's testimony and the few times it was referred to by the prosecutor in closing argument were so prejudicial that it would "shock the conscience" to allow the verdict to stand. *See Cunningham*, 2000-NMSC-009, ¶ 21 ("Parties alleging fundamental error must demonstrate the existence of circumstances that 'shock the conscience' or implicate a fundamental unfairness within the system that would undermine judicial integrity if left unchecked." (citation omitted)). Thomas's testimony was essentially cumulative of Villegas's testimony, and there was sufficient evidence for the jury to find Defendant guilty even if Thomas had not testified.

{33} A defendant must prove three elements under *Brady*: (1) the evidence must

19

have been suppressed by the prosecution, (2) the evidence must have been favorable to the defendant, and (3) the evidence must have been material to the defense. *See State v. Trujillo*, 2002-NMSC-005, ¶ 50, 131 N.M. 709, 42 P.3d 814. Even assuming without deciding that Defendant satisfied *Brady*'s first two elements, Defendant fails to convince this Court of the materiality of the MDC record. In order for evidence to be material under *Brady*, there must be "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Trujillo*, 2002-NMSC-005, ¶ 50.

{34} Defendant argues on appeal that the MDC record was material "as it would have challenged . . . Thomas' claim of a confession." The MDC record certainly raises the question of Thomas's truthfulness but is not definitive proof that Thomas was not in PCDC at the same time as Defendant. Yet even without the record, the defense tried to impeach Thomas and specifically asked him, "Would it surprise you to know that Mr. Gardner didn't go to Texas until November?" Thomas replied, "Maybe I got my days wrong, or whatever, but, I mean, I know—that's why I know him; it was from Texas." Defendant does not explain why Thomas's testimony was vital to the State's case or why there is a reasonable probability that a different outcome would have resulted had the MDC records been provided to Defendant. If

the defense had the record at trial, it could have produced the record to impeach Thomas; but the jurors likely did not find Thomas credible anyway, given the lack of any real substance to his testimony and his criminal record. Accordingly, we do not find any violation of *Brady* by the State and affirm the district court's findings regarding Thomas's testimony and the MDC record.

**D.      The District Court's Denial of Defendant's Motion for a New Trial Was Not an Abuse of Discretion**

{35}      Finally, Defendant argues the district judge erred in denying the motion for a new trial. We review the denial of a motion for new trial for abuse of discretion. *State v. Moreland*, 2008-NMSC-031, ¶ 9, 144 N.M. 192, 185 P.3d 363. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case." *Id.* "The trial court has broad discretion in granting or denying a motion for new trial, and such an order will not be reversed absent clear and manifest abuse of that discretion." *State v. Guerra*, 2012-NMSC-027, ¶ 18, 284 P.3d 1076.

{36}      In denying Defendant's motion, the district court noted that "Thomas's alleged perjured testimony did not affect the outcome of the trial" and that "there was sufficient evidence to sustain a conviction absent . . . Thomas's testimony." Based upon our review of the evidence in this case and the discussion above, we agree and

21

find no abuse of discretion by the district court. Accordingly, we affirm the denial of the motion for a new trial.

## III. CONCLUSION

{37} For the foregoing reasons, we affirm Defendant's convictions for first-degree murder and armed robbery.

_____
**PETRA JIMENEZ MAES, Justice**

**WE CONCUR:**

_____
**JUDITH K. NAKAMURA, Chief Justice**

_____
**EDWARD L. CHÁVEZ, Justice**

_____
**CHARLES W. DANIELS, Justice**

_____
**BARBARA J. VIGIL, Justice**

22