41 So.3d 357 (2010)
Roy Howard MIDDLETON, Jr., Appellant,
v.
STATE of Florida, Appellee.
No. 1D09-48.
District Court of Appeal of Florida, First District.
July 23, 2010.
*358 Michael R. Ufferman of Michael Ufferman Law Firm, P.A., Tallahassee, for Appellant.
Bill McCollum, Attorney General, and Christine A. Guard, Assistant Attorney General, Tallahassee, for Appellee.
KAHN, J.
Appellant Roy Howard Middleton, Jr., challenges the denial of a post-conviction motion, filed pursuant to Florida Rule of Criminal Procedure 3.850. We reverse, finding that Middleton has satisfied what is commonly referred to as the "prejudice" prong of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

FACTUAL & PROCEDURAL BACKGROUND
In this appeal, we consider for the second time a denial of Middleton's rule 3.850 claim for ineffective assistance of counsel. Originally, an Escambia County grand jury returned an indictment charging Middleton with first-degree murder. Subject to a capital prosecution, appellant proceeded to trial, where he was legally entitled to *359 a 12-person panel. After deliberations began, but before the verdict was announced, the State moved to strike juror Foster, who had failed to disclose (when asked) he had previously been convicted of a felony. The court granted the State's motion and removed Foster from the panel.
The trial court then asked Middleton whether he wished to proceed with just 11 jurors, or, in the alternative, replace Foster on the jury with a previously-dismissed alternate juror. Defense counsel, however, did not inform appellant or the trial court of a third optionthat Middleton could move for a mistrial on the ground that a juror had been discharged during deliberations. Appellant ultimately decided to proceed with an 11-person jury, which convicted him of the lesser-included offense of second-degree murder.
Middleton brought a rule 3.850 motion alleging ineffective assistance of counsel, arguing, inter alia, that counsel was ineffective in failing to move for a mistrial after the State uncovered Foster's criminal record. After an evidentiary hearing on the issue, the trial court denied the claim. In case number 06-3378, we affirmed without discussion the trial court's denial of five post-conviction claims, but held that trial counsel was ineffective for failing to advise appellant of his option to move for a mistrial. See Middleton v. State, 984 So.2d 522, 522 (Fla. 1st DCA 2007) (Middleton I). Because the post-conviction court failed to make a credibility determination on Middleton's hearing testimony that he would have chosen to move for a mistrial had counsel advised him of the option, the court remanded the case for the limited purpose of making such a finding. See id. at 522-23.
On remand, the parties provided memoranda on the issue of whether appellant would have moved for a mistrial had he been given the option. Middleton submitted an affidavit from trial counsel, who believed appellant would have moved for a mistrial. The trial court issued an order concluding that appellant "has demonstrated that he would have requested a mistrial when it was discovered that juror Foster needed to be removed from his jury, had he known that a mistrial was an available option." The court nonetheless refused to grant relief, finding that Middleton "failed to demonstrate a reasonable probability that the outcome of a new trial would have been any different in light of the weight of the evidence." In this appeal, Middleton squarely raises the issue of whether the certain grant of a mistrial satisfies the prejudice requirement of Strickland.

ANALYSIS
In reviewing a ruling on a claim for ineffective assistance of counsel, we defer to the trial court's findings on factual issues, but review de novo the court's ultimate conclusions on the deficiency of performance and prejudice. See Bruno v. State, 807 So.2d 55, 61 (Fla.2001) (citing Stephens v. State, 748 So.2d 1028, 1033 (Fla.1999)). Neither party now disputes that defense counsel's performance was deficient, leaving appellant to establish that "the deficient performance prejudiced the defense. ..." Strickland, 466 U.S. at 687, 104 S.Ct. 2052 (requiring defendant to show "that counsel's errors were so serious as to deprive defendant of a fair trial, a trial whose result is reliable"). Stated differently, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id., 466 U.S. at 694, 104 S.Ct. 2052.
The State relies largely on the Third District decision in State v. Stirrup, asserting that the "crucial test is whether counsel's errors ... had an effect on the judgment *360 of conviction." 469 So.2d 845, 847-48 (Fla. 3d DCA 1985) (citing Strickland, 466 U.S. at 692, 104 S.Ct. 2052). To that end, the State argues, the "likelihood of a different outcome in a `mini-proceeding' (e.g., motion for mistrial) ... is [not] what is contemplated by the term `proceeding' as used in Strickland." Stirrup, 469 So.2d at 848. This case thus presents the question whether "Strickland's use of `the proceeding' means that a defendant must demonstrate that the decision by a different factfinder at a different trial would likely have been an acquittal, or whether, at least in some situations, the denial of a significant procedural right ... is sufficient to satisfy the prejudice prong of Strickland." United States v. Ramsey, 323 F.Supp.2d 27, 39 (D.D.C.2004).
Some history of Middleton I, drawn from our files, informs our analysis. Before issuing the opinion in Middleton I, this court promulgated an order directing the parties to respond to the following question:
[W]hether the requirement for demonstrating prejudice, i.e., a showing that `the result of the proceeding would have been different' ... would be satisfied in this case if appellant established that the trial court was required to declare a mistrial on the juror issue or whether prejudice could only be demonstrated if appellant established a reasonable probability that the result of a new trial following the mistrial would have been different.
We ultimately remanded the case. The opinion established both the parameters of the remand and the panel's thinking in terms of the issue remaining for decision:
[A]lthough appellant testified during the evidentiary hearing that he would have chosen the option of moving for a mistrial rather than proceeding with eleven jurors had counsel informed him of such, the trial court made no express credibility determination with respect to this testimony. If appellant had moved for mistrial, the trial court would have had to grant the motion under the case law. As such, we remand the case to the trial court to determine whether appellant has demonstrated the requisite prejudice pursuant to Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
Middleton I, 984 So.2d at 522-23 (emphasis supplied).
The panel's use of the introductory phrase "as such" to establish the breadth of the remand may only be interpreted to refer to the previous sentence noting that appellant would have been entitled to a mistrial, had counsel moved for the same. Accordingly, we interpret Middleton I  and the order we issued preceding the opinionto provide that appellant would demonstrate prejudice by showing that he would have requested, and the trial court would have granted, a mistrial. By implication, then, Middleton I has already determined that the mistrial would suffice and no inquiry into the likely outcome of a new trial would be required.
The trial court's interpretation, respectfully, virtually nullified the remand. One could ask, and appellant certainly does, why would we remand for a credibility determination as to Middleton's sincerity in seeking a mistrial if he could not thereby establish the requisite prejudice? We perhaps did not have to limit the scope of our mandate, but we did. In our view, the first panel directed only consideration of Middleton's credibility, thereby signaling it had already resolved the issue upon which the trial court denied relief. We know, of course, that "`questions of law actually decided on appeal ... govern the case in the same court and the trial court, through all subsequent stages of the proceedings.'" *361 Tatum v. State, 27 So.3d 700, 704 (Fla. 3d DCA 2010) (citing State v. McBride, 848 So.2d 287, 289, 291 (Fla. 2003)). Having observed no change in the relevant factual circumstances, we are not inclined to offer a competing determination on a legal question upon which this court has already passed.
We turn next to the asserted tension between Stirrup and appellant's present argument. We have noted with interest another Third District decision applying the Stirrup rule, Vaz v. State, 626 So.2d 1022 (Fla. 3d DCA 1993). There, the appellant alleged ineffectiveness in his attorney's failure to object to the trial court's allowance of only fifteen minutes of closing argument. See id. at 1022. Counsel for Vaz' codefendant, who preserved an objection on the same grounds, was vindicated by Adams v. State, 585 So.2d 1092, 1094 (Fla. 3d DCA 1991), which held that fifteen minutes for closing argument was "simply not enough and deprived appellant of a fair trial." Recognizing (but not disturbing) its holding in Stirrup, the court held that Vaz had satisfied the prejudice prong of Strickland. See Vaz, 626 So.2d at 1023. Because the test for prejudice under Stirrup was "whether counsel's errors had an effect on the judgment of conviction," 469 So.2d at 847-48, and Vaz' codefendant had already established the error, entitling the codefendant to a new trial, then, the court reasoned, "it is now apodictic that the result of the proceeding would have been different, i.e., a reversal of the conviction...." See Vaz, 626 So.2d at 1023.
We find Vaz significant not only because it abates the suggestion of conflict between Stirrup and appellant's principle contention, but for its reasoning as well. Rather than consider the weight of the evidence to support its holding, the court focused upon a procedural right inuring to the benefit of the defendant, thus disproving the assertion that appellant must, in effect, establish his innocence to show prejudice under Strickland.
Without saying as much, the Third District must have recognized, as we do, that the grant of a new trial, after conviction in a criminal case, should be fairly characterized as a positive for the defense. Moreover, having been convicted of and sentenced for second-degree murder, Middleton has benefited in another way by the prospect of a new trial. Such advantage springs from State v. Montgomery, 39 So.3d 252, 255 (Fla.2010), which invalidated the previous standard jury instruction on manslaughter and held that "under Florida law, the crime of manslaughter by act does not require that the State prove that the defendant intended to kill the victim." The former standard instruction (since amended) required the State to prove the defendant "intentionally caused the [victim's] death." In re Standard Jury Instructions in Criminal Cases, 997 So.2d 403, 404-05 (Fla.2008). When presented with a choice between the lesser-included offenses of second-degree murder and manslaughter, juries contemplating first-degree murder charges may have chosenand by proper logic were directed to choosethe greater of the two lesser-included offenses where no intent to kill was found. A new jury in this case will be properly instructed on the lessers.
We are further persuaded in the correctness of appellant's position by analogy to other ineffective assistance scenarios. "[W]here the ill-advised client pleads guilty when it was not in his best interests to do so, he establishes prejudice by showing that but for counsel's deficient performance a reasonable probability exists that the defendant ... would have insisted *362 on a trial." Ramsey, 323 F.Supp.2d at 42 (citing Hill v. Lockhart, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)). Similarly, a defendant convicted at trial has a claim for ineffective assistance where counsel is deficient in advising him of the respective consequences between going to trial and entering a plea, and the defendant "can demonstrate that he would have pleaded guilty if he had been represented by competent counsel." Id. Likewise, "[t]he failure of trial counsel to file a timely notice of appeal when requested to do so constitutes ineffective assistance ... even when the lost appeal may not have had a reasonable probability of success." Id. at 41 (citing Roe v. Flores-Ortega, 528 U.S. 470, 477-78, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000)). In the same way that an appeal not taken because of late filing prejudices a defendant by denying him "the opportunity for a second trial he otherwise would have had," so too does counsel's failure to request a mistrial deprive Middleton of a "procedural right to which the law entitle[d]" him. Id. at 40-41 (citing Lockhart v. Fretwell, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993)). In accord with the Supreme Court's treatment of pleas and appeals, we must conclude the "question is not ultimate guilt but process." Id. at 42.
By way of a final illustration, our case law does not require a defendant to show that a jury trial, upon withdrawal of a guilty plea, would result in a better outcome. As this court has observed, "It is not necessary to allege, in addition, that a defense existed to the charge." Mason v. State, 742 So.2d 370, 371 (Fla. 1st DCA 1999). In Mason, the majority expressly rejected the suggestion made by the dissent that in cases involving a no-contest or guilty plea, "a post-conviction petitioner, should ... normally have to allege, as support for the claim of prejudice in fact, that the petitioner either had a procedural defense to the charge or a factual defense that would have been viable had the case proceeded to trial...." Id. at 372 (Kahn, J., dissenting). Our supreme court also does not impose such a requirement. See Grosvenor v. State, 874 So.2d 1176 (Fla. 2004) (rejecting dissent's suggestion that the "correct inquiry ... is whether there was a viable defense," and instructing courts to "consider the totality of the circumstances" "in determining whether a reasonable probability exists that the defendant would have insisted on going to trial").
For the foregoing reasons, we hold that Middleton has established prejudice, in satisfaction of Strickland, by showing that he would have requested, and the trial court would have granted, a mistrial. In this situation, then, "the denial of a significant procedural right ... is sufficient to satisfy the prejudice prong of Strickland." Ramsey, 323 F.Supp.2d at 39. Because the trial court has already made the requisite findings entitling Middleton to relief, we REVERSE and REMAND for a new trial.
DAVIS, J., concurs, and THOMAS, J., concurs with opinion.
THOMAS, J., concurring.
I concur in the majority opinion, but write to explain that while we cannot determine whether Appellant will again be tried for first-degree murder, the possibility is not foreclosed by the constitutional prohibition against double jeopardy. If Appellant is tried for first-degree murder, he will have the right to demand a 12-person jury. Thus, contrary to the State's argument, Appellant has demonstrated prejudice by counsel's failure to obtain a mistrial after a juror was removed for misconduct.
*363 As explained in the majority opinion, although Appellant was indicted for first-degree murder, the 11-person jury convicted him of the lesser-included offense of second-degree murder. The State has characterized the verdict as a "jury pardon," asserting no prejudice can be demonstrated because Appellant will only be entitled to a six-person jury if he obtains post-conviction relief and his conviction is vacated. As explained herein, however, the verdict is null and void. Allowing an 11-person verdict in a capital trial invalidated the structure of the trial; therefore, jeopardy did not attach to the verdict, and Appellant will be entitled to demand a 12-person jury on retrial if he is tried again for first-degree murder.
The trial court found that Appellant would not have waived his right to a mistrial after a juror was removed following deliberations, and the State does not contest this fact. Appellant has proven that he would have terminated the trial before a verdict could have been rendered. Appellant and the State are now returned to status quo ante, and the State may seek to try Appellant for the capital crime of first-degree murder. Thus, no jeopardy attached to the proceeding or the verdict finding Appellant guilty of second-degree murder. See Richardson v. United States, 468 U.S. 317, 326, 104 S.Ct. 3081, 82 L.Ed.2d 242 (1984) (holding double jeopardy did not bar retrial where a jury could not render a verdict and a mistrial was granted); see also Ricketts v. Adamson, 483 U.S. 1, 11, 107 S.Ct. 2680, 97 L.Ed.2d 1 (1987) (holding double jeopardy did not prohibit capital prosecution of defendant who pled guilty to second-degree murder and agreed to testify against co-defendants but violated plea agreement by refusing to testify at retrial, and state properly sought new indictment for capital murder resulting in death sentence imposed at trial for first-degree murder); Sattazahn v. Pennsylvania, 537 U.S. 101, 112-13, 123 S.Ct. 732, 154 L.Ed.2d 588 (2003) (holding that where penalty phase jury deadlocked on sentence, and trial court imposed default life sentence required by state law, but conviction was later reversed, neither double jeopardy nor due process barred new trial for capital murder with exposure to death penalty). The Florida Supreme Court noted in State v. Collins, 985 So.2d 985, 992 (Fla.2008), that the guarantee against double jeopardy protects against a second prosecution for the same offense after an acquittal. Here, due to the structural defect in the trial, no verdict was rendered; therefore, no acquittal on the capital charge occurred.
An 11-person jury cannot reach a legitimate verdict in a capital case, absent a waiver by the defendant. See Williams v. State, 792 So.2d 1207, 1210 (Fla.2001) (holding a new trial required when juror is replaced by an alternate during jury deliberations). Although Williams was not decided at the time of Appellant's trial, the same rationale applies, as noted in Middleton I, 984 So.2d at 522. In Williams, the Florida Supreme Court explained that a verdict rendered invalid by an 11-person jury in a capital case is not subject to a harmless error analysis. 792 So.2d at 1210. Although the court did not specifically find that such a procedure is fundamental error, it noted that such a jury is subject to the "specter of jury taint." Id.
It is well established that "`former jeopardy includes one who has been acquitted by a verdict duly rendered.'" Burks v. United States, 437 U.S. 1, 7, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978) (emphasis added) (quoting Sapir v. United States, 348 U.S. 373, 374-75, 75 S.Ct. 422, 99 L.Ed. 426 (1955)). Here, the verdict was not "duly rendered," because an 11-person jury cannot make any decision in a capital case under state law, absent the defendant's *364 agreement. Appellant's waiver was not knowing and voluntary because he was not advised of his right to obtain a mistrial.
Allowing jury deliberations to proceed with 11 people is a structural defect, not a trial error. See State v. Goodley, 423 So.2d 648 (La.1982) (determining double jeopardy principles would not prevent defendant from being retried where acquittal resulted from an illegal verdict based on non-unanimous vote, but holding defendant could not be subjected to another trial where he attacked only excessiveness of sentence, not the conviction). Unlike the defendant in Goodley, Appellant collaterally attacked his conviction on the correct assertion that the non-waivable structural defect of an 11-person jury verdict rendered the entire proceeding invalid.
Courts have addressed whether a trial is rendered a nullity due to "structural defect" or "structural error." Generally, when an error is subject to a harmless error analysis, the reviewing court will not consider the entire trial invalid. By contrast, a structural error
`affec[ts] the framework within which the trial proceeds' and [is] not `simply an error in trial process itself.' ... Structural error usually requires no showing of prejudice by the defendant and may invalidate the first proceeding. If the first proceeding is invalid or void, then no jeopardy attaches to those proceedings.
Ex parte McCombs, 24 So.3d 1175, 1178 (Ala.Ct.Crim.App.2009) (quoting United States v. Gonzalez-Lopez, 548 U.S. 140, 126 S.Ct. 2557, 165 L.Ed.2d 409 (2006) (citations omitted)). Here, a structural error occurred because Appellant successfully demonstrated he would not have authorized an 11-person jury to return a verdict. No specific showing of prejudice was required because, as explained in Middleton I and in the majority's decision here, prejudice was presumed once Appellant established he would have moved for mistrial if given the opportunity. Thus, a new trial for capital murder may be conducted.
As the United States Supreme Court noted in United States v. Dinitz, 424 U.S. 600, 607, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976) (quoting United States v. Jorn, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971)), "`where circumstances develop not attributable to prosecutorial or judicial overreaching, a motion by the defendant for mistrial is ordinarily assumed to remove any barrier to reprosecution, even if the defendant's motion is necessitated by prosecutorial or judicial error.'" Cf. United States v. Martin Linen Supply Co., 430 U.S. 564, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977) (holding double jeopardy prohibits government appeal and retrial following valid judgment of acquittal entered by trial court after jury deadlocked on criminal contempt charge).
Appellant's position is no different than defendants who successfully obtain a mistrial or successfully move to vacate their pleas and are then returned to their original position. See Ricketts, 483 U.S. at 11, 107 S.Ct. 2680 (holding that where a plea agreement is vacated, the parties can be returned to their original position without violating the prohibition against double jeopardy). In Ricketts, the Court noted its prior decision, United States v. Scott, 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978), in which it held that "`in a case such as this the defendant, by deliberately choosing to seek termination of the proceedings against him on a basis unrelated to factual guilt or innocence ... suffers no injury cognizable under the Double Jeopardy Clause[.]" Ricketts, 483 U.S. at 11, 107 S.Ct. 2680 (emphasis added). Here, Appellant has successfully demonstrated that, but for the Sixth Amendment violation, he would have demanded "termination *365 of the proceedings against him on a basis unrelated to factual guilt or innocence." Both parties, therefore, must be returned to their original position.
Once Appellant and the State are returned to the status quo ante, Appellant could be subject to trial for capital murder. Compare Chaffin v. Stynchcombe, 412 U.S. 17, 35, 93 S.Ct. 1977, 36 L.Ed.2d 714 (1973) (holding possibility of more severe sentence on retrial after appeal or collateral attack does not violate double jeopardy or due process protections), and United States v. Bordeaux, 121 F.3d 1187 (8th Cir.1997) (holding double jeopardy prohibition not applicable where jury unable to agree on greater charge but convicts on lesser-included offense because no "implied acquittal" occurred on greater offense), with North Carolina v. Pearce, 395 U.S. 711, 725, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969) (holding it is denial of due process to impose vindictive sentence following successful appeal), Ex parte Gillentine, 980 So.2d 966 (Ala.2007) (holding state could not retry defendant who was convicted of lesser-included offense where retrial mandated by jury instruction error which did not constitute "structural defect" nullifying original verdict), and Moody v. State, 931 So.2d 177 (Fla. 2d DCA 2006) (trial court not permitted under double jeopardy prohibition and Fla. R.Crim. P. 3.640(a) to retry defendant on greater charge where jury returned verdict for lesser-included offense and appellate court ruled "jury taint" required new trial only on lesser-included charge).
Here, unlike Gillentine, a mistrial should have and would have been declared, but for the violation of Appellant's Sixth Amendment right to counsel. The Second District's opinion in Moody is distinguishable because, there, a new trial was granted due to juror misconduct, not an illegally-composed jury panel. Cf. Goodley, 423 So.2d at 651.
We cannot now determine whether Appellant will be tried again for first-degree murder; that decision belongs to a separate branch of the government. Because that is a legal possibility, however, Appellant was prejudiced by his counsel's failure to move for a mistrial during the original trial.
Thus, I concur in the majority opinion for reasons stated therein, in addition to the reasons explained above.