WARNER, J.
 

 After the conclusion of closing argument in appellant’s trial for organized fraud, the trial court changed the instruction on the elements of the crime, from an instruction requiring the jury to find that the appellant
 
 and
 
 his co-defendant engaged in a scheme to defraud, to an instruction requiring that the jury find that the appellant
 
 and/or
 
 his co-defendant engaged in a scheme to defraud. Because appellant had relied on the prior instruction in his argument to the jury, we conclude that the error requires reversal.
 

 Appellant and his co-defendant were charged by amended information with committing organized fraud, in violation of section 817.034(4)(a)l., Florida Statutes (2001). The state alleged that, during a three-year period, the appellant obtained over $50,000 from various victims, making the offense a first-degree felony.
 

 The evidence at trial showed that appellant owned and operated an investment company called Merit First. Appellant and his co-defendant, Scott Smith, each sold investment opportunities to friends and acquaintances. The state called thirteen witnesses who each gave substantial sums of money to appellant or Smith for investment purposes. Smith attracted investors, mostly from his church, to appellant’s firm. Some investors dealt solely with appellant; some dealt solely with Smith; and some dealt with both appellant and Smith. The investors were usually given promissory notes, which were to be repaid within sixty-ninety days, and told that their funds would be used to finance shell corporations that would be sold to start-up companies seeking to go public. However, the investors were never repaid.
 

 A state investigator testified that he had reviewed appellant’s books and records and could find no investor money going into any investments at all, but he did find substantial amounts flowing to appellant and his family and to Smith. Smith testified that before he joined appellant, he checked out his references, which seemed accurate. He began selling investments for appellant who would continually tell Smith that he was on the brink of a sale of a shell corporation which would bring the return to investors. After about eighteen months, Smith stopped believing him. Smith claimed that he repaid some investment funds to one investor.
 

 At the charge conference, the parties agreed to instruct the jury that to prove the elements of organized fraud, the state must prove: (1) that appellant
 
 and
 
 Smith engaged in a scheme to defraud, and (2) that appellant
 
 and
 
 Smith obtained property through the scheme to defraud. Appellant’s defense lawyer relied upon this instruction in closing argument, arguing to the jury as follows:
 

 [DEFENSE:] And the one thing that [the prosecutor] said is you have to believe that John Martin O’Keefe, Sr.
 
 and
 
 Peter Scott Smith engaged in it together
 
 not or. It’s and. And that’s very, very critical because they both had to be in on it together....
 

 Now, you’ll be told by the State and you’ll be told by the judge that you have to try them separately on their own facts. But the law is very clear. It’s Mr. O’Keefe
 
 and
 
 Mr. Smith engaged in a scheme to defraud. That has to be proven beyond and to the exclusion of every reasonable doubt.
 

 Part of appellant’s counsel’s closing argument pointed to the fact that most of the investor witnesses invested through Mr.
 
 *939
 
 Smith without contacting appellant. Smith’s closing argument focused on his lack of knowing participation in a scheme to defraud, that he was simply the “mate” on the boat of which appellant was the “captain.” In the end of rebuttal, the prosecutor asked the jury to determine whether the two defendants were “in this together.”
 

 After the closing arguments, the trial court questioned whether the jury instructions agreed on at the charge conference were correct. In particular, the court questioned whether the conjunction “and” should be placed between the names of the defendants in the instructions on the elements of the crime. The prosecutor noted that the jury needed to make a determination as to each defendant separately, suggesting that the instruction “probably should be and/or.” Counsel for co-defendant Smith also asked that the instruction be changed to “and/or” and explained that such an instruction would be “more appropriate.”
 
 [1]
 
 However, appellant’s defense counsel repeatedly objected to the change in the instruction, noting that in closing argument he relied on the instructions that were presented in the charge conference. The court also believed that appellant’s closing argument was contrary to standard jury instruction 3.12B.
 
 [2]
 

 Ultimately, over appellant’s objection, the trial court changed the jury instruction from the “and” conjunction to the “and/or” conjunction, instructing the jury as follows:
 

 To prove the crime of organized fraud, the State must prove the following two elements beyond a reasonable doubt:
 

 1. JOHN MARTIN O’KEEFE, SR. and/or PETER SCOTT SMITH engaged in a scheme to defraud.
 

 2. JOHN MARTIN O’KEEFE, SR. and/or PETER SCOTT SMITH obtained property through the scheme to defraud.
 

 Before the trial court instructed the jury, defense counsel asked for a curative instruction to notify the jury of the change in the wording of the instruction, explaining that he did not want the jury left with the impression that he “had no idea what he was talking about.” In particular, appellant’s counsel explained: “I think you would say that all lawyers agreed based on 3.12B we amended it to and/or. I think they have to be put on notice if you’re going to overrule my objection, I think, there has to be an explanation. Otherwise, this is a detriment of Mr. O’Keefe’s defense in closing argument.” The trial court denied appellant’s request for a curative instruction and instructed the jury with the changed instruction. The jury found both defendants guilty as charged. Appellant was sentenced to five years in prison and ordered to pay restitution to his victims. He appeals.
 

 On appeal, appellant argues that changing the jury instruction after closing argument was reversible error. He contends that the error was particularly egregious where the court denied his request for a curative instruction, which left the jury with the impression that defense counsel was either trying to mislead it or was ignorant of the law. We agree that this error requires reversal.
 

 
 *940
 
 “Closing arguments are the last and best opportunity trial counsel have to directly address the jury on what they should or should not decide within the parameters of the proper instructions the jury is about to receive from the trial judge.”
 
 King v. State,
 
 642 So.2d 649, 650 (Fla. 2d DCA 1994),
 
 disapproved of on other grounds, Welsh v. State,
 
 850 So.2d 467 (Fla.2003). In accordance with this principle, several cases have found reversible error where the trial court, after closing arguments, instructed the jury differently than what was determined at the charge conference.
 
 See Kirkland-El v. State,
 
 883 So.2d 383 (Fla. 4th DCA 2004) (holding that the defendant was deprived of a fair trial on a charge of aggravated battery where the trial judge decided to omit a “duty to retreat” instruction at the charge conference, but then in the middle of closing arguments, the judge changed his mind and decided that the instruction would in fact be given to the jury);
 
 Knuth v. State,
 
 679 So.2d 22 (Fla. 2d DCA 1996) (holding that a change in jury instructions after closing argument amounted to reversible error where the defendant lost the opportunity to address the proper DUI manslaughter instruction during closing);
 
 King,
 
 642 So.2d at 650 (holding that the defendant was deprived of the right to a fair trial where, after closing arguments, the trial judge reversed himself and decided to give an instruction on a lesser-included offense requested by the defense; although the instruction was ultimately given, this did not cure the error because defense counsel was forced to present the closing argument without being able to argue the lesser-included offense).
 

 In
 
 Kirkland-El,
 
 we articulated the magnitude of the damage that can be done to the presentation of a defendant’s case where the jury instructions are changed following closing argument:
 

 Relying on the trial court’s rulings at the charge conference, counsel argued that Kirkland-El had no duty to retreat in his own home. Then, after the trial court reversed its position, the state was able to argue consistently with what the jury would hear from the jury instructions.
 
 Thus, the jury would have to conclude that defense counsel was either trying to purposely mislead it or was ignorant of the law.
 
 Because the instruction was central to the defense of the case on a hotly contested issue, Kirkland-El was prejudiced by the actions of the trial court.
 

 883 So.2d at 385 (emphasis added). Similarly, in
 
 Knuth,
 
 the Second District explained that although the trial court “ultimately gave an appropriate instruction, the failure to give the instruction before the defendants had their final say generated prejudice that can only be remedied by retrial.” 679 So.2d at 23.
 

 The error which occurred in this case constitutes a per se reversible error. Recently, in
 
 Johnson v. State,
 
 2010 WL 3909859 (Fla. Oct.7, 2010), our supreme court explained the per se reversible error rule:
 

 Like the harmless error test, the per se reversible error rule is concerned with the right to a fair trial.
 
 [State v. DiGuilio,
 
 491 So.2d 1129, 1135 (Fla.1986).] “The test of whether a given
 
 type
 
 of error can be properly categorized as per se reversible is the harmless error test itself.”
 
 Id.
 
 “If application of the test to the type of error involved will always result in a finding that the error is harmful, then it is proper to categorize the error as per se reversible.”
 
 Id.
 

 This Court has also applied the per se reversible error rule to those cases where the appellate court is unable to conduct a harmless error analysis be
 
 *941
 
 cause it would have to engage in pure speculation in order to attempt to determine the potential effect of the error on the jury.
 

 Errors which the
 
 Johnson
 
 court categorized as per se reversible error include: (1) a trial court responding to a jury question outside of the presence of defense counsel,
 
 Ivory v. State,
 
 351 So.2d 26, 28 (Fla.1977); (2) a bailiffs unsupervised conversations with the jury,
 
 State v. Merricks,
 
 831 So.2d 156, 161 (Fla.2002); and (3) substitution of a juror after deliberations begin,
 
 Williams v. State,
 
 792 So.2d 1207, 1210 (Fla.2001). In
 
 Johnson,
 
 the court held that a court’s preemptive instruction that it would not allow read back of testimony prior to any request constituted per se reversible error.
 

 We find that the error in this case of changing the substance of the elements of the charged crime after closing argument is the type of error which must be treated as per se reversible, because we would be engaging in speculation to determine the effect that such a change had on the jurors. As noted in
 
 Kirkland-El,
 
 the jurors might completely disregard the defense’s case and argument on the ground that defense counsel was trying to mislead them or was simply ignorant of the law.
 

 The court could have cured the error in this case by accepting appellant’s request for a curative instruction. Unfortunately, the court refused to give such an instruction.
 

 For these reasons, we reverse and remand for a new trial.
 

 POLEN and LEVINE, JJ., concur.
 

 [1]
 

 . We do not decide, because it was not raised, whether using "and/or” would be correct in this case.
 

 [2]
 

 . That instruction provides as follows: “The defendants have been tried together; however, you must consider each defendant and the evidence applicable to him separately. You may find one, any or both guilty or not guilty. However, your verdict as to one defendant must not affect your verdict as to the other(s).”